No. 19,507.

THE MILWAUKEE CORRUGATING COMPANY, *Appellee*, v.
E. L. TRAYLOR, *Appellant*.

SYLLABUS BY THE COURT.

1. ORDER—*To Pay Another's Debt—Conditional Acceptance.* The
defendant executed a memorandum in the following form:

"LEBO, KAN., June 25-13.

"Recd. from Milwaukee Corrug't. Co. an order from Frank
Anderson to pay their note of $409 as soon as proceeds of sale
of hardware is available, which I will do.

E. L. TRAYLOR."

*Held*, not to constitute an absolute acceptance of an order
to pay another's debt, but a qualified or conditional acceptance,
defendant's liability depending upon the happening of the
condition.

2. SAME—*No Liability until Condition is Fulfilled.* The defend-
ant having agreed to exchange a farm for a stock of hard-
ware belonging to Anderson, the stock to be invoiced and any
difference in the invoice price and the agreed value of the
land to be paid in cash, executed to a third party the memo-
randum mentioned in the preceding paragraph. When the in-
voice was completed it was found that the value of the stock
was less than the value of the farm. By a subsequent agree-
ment the defendant procured for Anderson a loan on the farm,
the proceeds of the loan being applied in payment of the dif-
ference due defendant on the exchange and the balance paid
to Anderson. *Held*, that the moneys passing through the hands
of the defendant were proceeds of the loan and not proceeds
of the sale of the stock of hardware, and that the plaintiff is
not entitled to recover from the defendant upon the written
memorandum.

Appeal from Coffey district court; WILLIAM C.
HARRIS, judge. Opinion filed May 8, 1915. Reversed.

*R. M. Hamer*, and *H. E. Ganse*, both of Emporia, for
the appellant.

*E. N. Connal, J. M. Pleasant*, both of Burlington,
*E. S. Ellis*, and *F. W. Yale*, both of Kansas City, Mo.,
for the appellee.

The opinion of the court was delivered by

PORTER, J.: On June 17, 1913, the defendant, E. L. Traylor, president of a bank at Lebo, and Frank Anderson, a merchant in the same town, entered into a contract by which Anderson traded a stock of merchandise to Traylor for one hundred sixty acres of land, the land to be taken at $45 an acre, the goods and fixtures to be invoiced, and any difference in the invoice price and the price of the land was to be settled for in cash. Both parties believed at this time that the stock of goods was more valuable than the land and that Traylor would be indebted to Anderson when the invoice was completed and the exchange made. Anderson was indebted to the plaintiff upon a promissory note, which was past due and held by the bank for collection. While the invoice was being taken Anderson gave the plaintiff an order on Traylor for the amount of the note, which Traylor accepted, executing to the plaintiff the following memorandum:

"LEBO, KAN., June 25-13.
"Recd. from Milwaukee Corrug't. Co. an order from Frank Anderson to pay their note of $409 as soon as proceeds of sale of hardware is available, which I will do.                    E. L. TRAYLOR."

Several days afterwards, when the invoice of the stock was completed, it was found that in place of Traylor owing Anderson it was the other way round, and that Anderson owed Traylor approximately a thousand dollars, that being the difference between the invoice and the agreed value of the land. A deed was made to the land, and, at Anderson's request, Traylor procured for him a loan of $3000. When the loan papers were completed and the money ready to be paid on the loan, Traylor retained the thousand dollars due him in the exchange of properties and paid the balance over to Mr. and Mrs. Anderson, closing the transaction. Anderson then paid $209.31 to Traylor to be sent to

the plaintiff and credited on the note. The balance of the loan he applied on other debts owed by him. Traylor wrote the plaintiff enclosing a draft for the payment and stating that this was all he was able to collect on the note; that when the invoice was finished Anderson was owing him in place of his owing Anderson; that he could not hold anything out on the loan since there was nothing coming from him to Anderson, and that he had done the best he could for the plaintiff. Thereupon plaintiff brought this action on the written acceptance of the order by Traylor and seeks to recover from him the amount due on the note. The trial court found for the plaintiff. The defendant appeals.

There is not the slightest dispute as to the facts. The case was orally argued by able counsel who have filed briefs. It is vigorously contended by the defendant that the judgment should be reversed. The plaintiff contends just as vigorously that the judgment should be affirmed. No authorities either from decided cases or from text- or horn-book law have been cited or referred to in the briefs or arguments.

It is said in the brief for defendant that the order to pay the note was accepted by Traylor in view of the conditions of the contract between himself and Anderson. On the other hand, it is insisted that the record is silent, and it is, as to whether the plaintiff knew of the pending trade between Anderson and Traylor, or the terms thereof. The record does show, however, that the contract to exchange properties was made on the 17th day of June, and that on the 25th day of June, while the invoice was still in progress, Traylor accepted the order. It must be assumed that the plaintiff understood that the parties had agreed to exchange properties and that the invoice was being taken for the purpose of completing the exchange.

There were three parties interested in the instrument on which the action is founded, although it is signed by one party alone. Anderson, the debtor,

draws an order, presumably in writing, in favor of his creditor, directing defendant to pay his debt. The plaintiff is the drawee; the defendant the accepter. Suppose, in direct opposition to Anderson's verbal directions, the defendant had retained from the proceeds of the loan the full amount due on the note and had paid it to the plaintiff. Could Anderson have maintained an action against defendant to recover the amount? Probably Traylor could have relied upon the order as a complete defense to such an action upon the ground that Anderson, having given him an unconditional order directing him to pay the note, would have been forever. estopped to say that defendant had exceeded his authority in following the directions. The answer to the supposed question does not aid the solution of the present case, because an order may always be broader than the acceptance; and if we consider the instrument as a three-sided one, and the order to pay unconditional, it is clear that the liability of the defendant must depend entirely upon the construction given to the acceptance. If that be regarded as conditional his liability to the plaintiff must depend upon the happening of the condition. The writing is not an unconditional acceptance of an order to pay another's debt, but is a qualified acceptance. Instead of agreeing to pay in any event, it declares that Traylor will pay the note to the plaintiff "as soon as proceeds of sale of hardware is available." If subsequently it developed that there were no proceeds of the sale of the hardware "available" or in the control of Traylor, he could be held liable only by extending the terms of the acceptance.

The same principle applies as in the analogous case of the acceptance of commercial paper. The situation is precisely the same. Indeed the law is well settled that there may be an acceptance of commercial paper on a separate instrument or writing. It may be by letter, by telegraph or memorandum describing, even

in very general terms, the negotiable instrument. ·(7 Cyc. 765.)   If the instrument in this case be construed as though it were the acceptance of commercial paper, it is clear that the liability of the defendant depends wholly upon whether the condition has been fulfilled.

"A conditional acceptance becomes absolute upon the performance or happening of the condition, but is not enforceable until complete fulfilment of the condition, unless performance is prevented by the accepter's own act."   (7 Cyc. 777, and cases cited in Note.)

The Kansas cases cited are *Carson v. Kerr,* 7 Kan. 268, and *Liggett v. Weed,* 7 Kan. 273.   Both cases announce the same rule, but in the first of the two the remarks in the opinion upon that question are dictum because the opinion expressly states that there was no acceptance of the draft.   In the second case, arising in part upon the same facts, the court deemed it necessary to decide the question as being directly involved. The syllabus reads:

"The drawee of a bill of exchange can only be made liable within the terms of his acceptance thereof; and where the acceptance is conditional, he is not liable until the condition is fulfilled."   (Syl. ¶ 2.)

Moreover, the holder always has it in his power to refuse a qualified or conditional acceptance, and may treat the bill as dishonored, but "when made a part of the acceptance a condition binds both accepter and holder."   (7 Cyc. 777.)

In plaintiff's brief it is insisted that the rights of the plaintiff could not be affected by any subsequent change made by Traylor and Anderson in the contract for exchange of the properties, but no change in the contract was made, as we understand it.   While the evidence clearly demonstrates that both Anderson and Traylor believed when the original contract was made that the invoice would show the value of the merchandise to be greater than that of the purchase price of the land, still in its terms the contract was broad enough to permit Traylor to recover from Anderson if the balance

turned out to be, as it did, the other way. There was, therefore, no change in the original contract. All that was done subsequently was to use the land for the purpose of securing a loan by Anderson and wife with which to pay Traylor the amount found to be due him on the price of the farm. The defendant had, of course, no thought of making himself absolutely liable to the plaintiff. The designation of the particular source from which he was to pay and all the conceded facts of the case establish that the acceptance was conditional upon there being a sum due Anderson from him as proceeds from the sale of the stock of goods. There was never anything due Anderson in that transaction as proceeds of the sale or exchange. He was obliged to borrow upon the farm funds, which, added to the invoiced value of the stock, equalled the price of the farm. The fact that he saw fit to borrow a larger sum than was necessary to complete the exchange does not affect the matter. The defendant did not bind himself to pay the plaintiff out of any moneys belonging to Anderson that might thereafter come into or pass through his hands, but out of proceeds of the sale of the stock.

It follows, therefore, that the judgment will be reversed and the cause remanded with directions to render judgment for defendant.

MASON, J. (dissenting) : The transaction between Anderson and Traylor by which their deal was closed may be described in different language, but it seems to me that it amounted to this: According to the original bargain Traylor, in payment for the stock of goods, was to deed the land to Anderson, who was to pay the difference, about $1000. Anderson found himself unable to carry out this arrangement, because he could not raise the money. A modification of the contract was therefore made, by which it was agreed that Traylor should borrow $3000 by a mortgage on the land, convey to Anderson the land subject to that lien, and pay him the difference between the value of the land as

so encumbered and the amount of the invoice. This is substantially what was done. Viewed in this light the money paid by Traylor to Anderson was a part of the proceeds of the sale of the hardware and was available for the payment of the accepted order.